UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

JACQUELINE BENJAMIN,                 CIVIL ACTION NO. 6:11-cv-01819
JONATHAN BENJAMIN,
GREGORY TRIM AND
TERRENCE BROWN,
individually and on behalf of
a class of persons

VERSUS                               JUDGE WALTER

MULTI-CHEM GROUP, L.L.C.             MAGISTRATE JUDGE HANNA

## REPORT  AND  RECOMMENDATION

The undersigned undertook a *sua sponte* review of jurisdiction in this action[1]

and, for the reasons explained below, the undersigned finds that this Court lacks

subject-matter jurisdiction over this action.   Accordingly, the undersigned

recommends that this matter be dismissed without prejudice.

### BACKGROUND  INFORMATION

This lawsuit arises out of an explosion and fire that occurred at defendant

Multi-Chem Group, LLC's place of business in New Iberia, Louisiana on June 14,

---

[1]     *Giannakos v. M/V Bravo Trader*, 762 F.2d 1295, 1297 (5th Cir. 1985) ("United States District Courts and Courts of Appeals have the responsibility to consider the question of subject matter jurisdiction *sua sponte* if it is not raised by the parties and to dismiss any action if such jurisdiction is lacking.)

2011.  In their complaint, the plaintiffs allege that they are four individuals who live approximately two miles from Multi-Chem's facility.  They allege that they were exposed to toxic, dangerous, and/or noxious chemicals released in the explosion and fire.  They seek to recover damages from Multi-Chem for loss of property, loss of use of property, diminution of property value, stigmatization of property, displacement from property, medical illnesses, aggravation of existing illnesses, fear of illnesses, lost chance of survival, lost life expectancy, medical expenses, physical and mental pain and suffering, disability, disfigurement, and impairment.

The plaintiffs allege that this Court has jurisdiction over this action under 28 U.S.C. § 1332, which confers jurisdiction on civil actions when the parties are diverse and the amount in controversy exceeds $75,000.00.  The undersigned reviewed the pleadings and determined that the requirements for diversity jurisdiction are not satisfied.  (Rec. Doc. 10).  The undersigned also ordered the plaintiffs to submit a brief setting forth the facts supporting their contention that this court has jurisdiction, specifically addressing the citizenship of the parties and the amount in controversy and supporting all relevant facts with summary-judgment-type evidence.  (Rec. Doc. 10 at 5).  The plaintiffs complied with the order and submitted a brief.  (Rec. Doc. 11).  The defendants also submitted a brief.  (Rec. Doc. 12).

The undersigned now finds that this Court lacks jurisdiction over this matter and recommends that the matter be dismissed.

## ANALYSIS

Federal district courts are courts of limited jurisdiction, possessing only the power authorized by the Constitution and by statute.[2]  Accordingly, federal courts have subject-matter jurisdiction only over civil actions presenting a federal question[3] and those in which the amount in controversy exceeds $75,000 exclusive of interest and costs and the parties are citizens of different states.[4]  The party invoking subject-matter jurisdiction in federal court has the burden of establishing the court's jurisdiction.[5]  The plaintiffs must bear that burden in this case.  The undersigned finds, however, that the plaintiffs have not proven that the amount in controversy exceeds the jurisdictional minimum nor have they proven that the parties are diverse in citizenship.

---

[2]     *Griffin v. Lee*, 621 F.3d 380, 388 (5th Cir. 2010); *Halmekangas v. State Farm Fire and Cas. Co.*, 603 F.3d 290, 292 (5th Cir. 2010).

[3]     28 U.S.C. § 1331.

[4]     28 U.S.C. § 1332.

[5]     *St. Paul Reinsurance Co., Ltd. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998).

## A.    DIVERSITY OF CITIZENSHIP

When a class action is brought under Rule 23 of the Federal Rules of Civil Procedure, as this case was,[6] and it is claimed that the court has jurisdiction based on the diversity of the citizenship of the parties, it is sufficient if the named class representatives are diverse in citizenship from the defendants, without regard to the citizenship of other members of the plaintiff class.[7]  "Thus, the citizenship of the unnamed class members is irrelevant to whether we have diversity jurisdiction, so long as the named class members are diverse from the opposing parties."[8]

In their complaint, the plaintiffs alleged that the named plaintiffs are Louisiana citizens, and they alleged that the sole defendant, Multi-Chem Group, L.L.C., is a "non-Louisiana limited liability corporation."  In their response to the undersigned's briefing order, the plaintiffs established that Multi-Chem's principal place of business is in the State of Texas.  But that is irrelevant.  The state of incorporation and the principal place of business establish the citizenship of a corporation.[9]  But there is no

---

[6]        Rec. Doc. 1 at ¶ 8.

[7]        *McLaughlin v. Mississippi Power Co.*, 376 F.3d 344, 354 -355 (5th Cir. 2004); *Carden v. Arkoma Assocs.*, 494 U.S. 185, 199-200 (1990); *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002).

[8]        *McLaughlin*, 376 F.3d at 354.

[9]        28 U.S.C. § 1332(c)(1).

evidence that Multi-Chem is a corporation.  Although the plaintiffs allege in their complaint that Multi-Chem is "a non-Louisiana limited liability corporation," a business is either a corporation or a limited liability company, and the plaintiffs filed a document from the Louisiana Secretary of State (Rec. Doc. 11-1 at 1), establishing that Multi-Chem is a limited liability *company*.

A limited liability company is a citizen of every state in which any *member* of the company is a citizen,[10] and "the citizenship of a LLC is determined by the citizenship of *all* of its members."[11]  Therefore, the diversity analysis for a limited liability company requires a determination of the citizenship of every member of the company.[12]  If any one of the members is not diverse, the limited liability company is not diverse.

In this case, the plaintiffs have not identified the members of the company or provided evidence of the members' citizenship.  Therefore, they have not proven Multi-Chem's citizenship nor have they proven that Multi-Chem is diverse in citizenship from the plaintiffs.

---

[10]    See, *Harvey v. Grey Wolf Drilling Co*., 542 F.3d 1077, 1080 (5th Cir. 2008).

[11]    *Harvey v. Grey Wolf*, 542 F.3d at 1080.  [Emphasis added.]

[12]    See, *Harvey v. Grey Wolf*, 542 F.3d at 1080; *Grupo Dataflux v. Atlans Global Group, L.P.*, 541 U.S. 567, 585, n. 1 (2004); *Carden v. Arkoma Assocs*., 494 U.S. 185, 196 (1990).)

**B.**    <u>A<span>MOUNT IN</span> C<span>ONTROVERSY</span></u>

In their complaint, the plaintiffs did not expressly allege that any plaintiff's claim exceeds $75,000 nor did they set forth sufficient facts to support a finding that it is facially apparent that the amount in controversy exceeds the jurisdictional threshold.  Therefore, the undersigned found that the amount in controversy is not apparent on the face of the complaint.  (Rec. Doc. 10 at 4).  When the amount in controversy is not facially apparent, the party invoking the court's jurisdiction (the plaintiffs, in this case) must prove by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional amount[13] by setting forth the facts that support a finding of the requisite amount.[14]  The claims of different plaintiffs may not be aggregated to satisfy the $75,000 jurisdictional amount in a putative class action.[15]  However, "so long as the amount in controversy for at least one plaintiff in a class action exceeds the jurisdictional minimum, then the court may exercise supplemental jurisdiction over the remaining class members' claims, regardless of their individual

---

[13]    *Garcia v. Koch Oil Co. of Texas Inc.*, 351 F.3d 636, 638-39 (5th Cir. 2003); *De Aguilar v. Boeing Co.*, 11 F.3d 55, 58 (5th Cir. 1993).

[14]    *Allen v. R&H Oil & Gas Co.*, 63 F.3d 1326, 1335 (5th Cir. 1995).

[15]    *Garcia*, 351 F.3d at 638-39, citing *Snyder v. Harris*, 394 U.S. 332, 336-38 (1969).

damages."[16]  Thus, the amount in controversy requirement is satisfied if at least one of the named plaintiffs claims damages exceeding $75,000.[17]  "The preponderance burden forces the defendant to do more than point to a state law that *might* allow the plaintiff to recover more than what is pled.  The defendant must produce evidence that establishes that the actual amount in controversy exceeds [the jurisdictional amount]."[18]

In response to the undersigned's briefing order, the plaintiffs submitted no summary-judgment-style evidence supporting their contention that the amount in controversy exceeds $75,000.  Instead, they merely stated – without proof of any kind – that the plaintiffs "were forced to evacuate their homes and businesses."  (Rec. Doc. 11 at 4).  They then reiterated their claim that the plaintiffs should be compensated for their "personal injury, mental anguish, discomfort, loss of enjoyment of life, loss of use, lost wages, fear, fright, property damage, and inconvenience."  (Rec. Doc. 11 at 4).  They also argued that the "face of Plaintiffs' complaint state [sic] claims that

_____

[16]      *Ackers v. International Paper Co.*, No. 11–0216, 2011 WL 2559844, at *2 (W.D. La. June 28, 2011), citing *Exxon Mobil Corp. v. Allapattah Services, Inc.*, 545 U.S. 546, 559 (2005), and *In Re Abbott Laboratories, Inc.*, 51 F.3d 524, 529 (5th Cir. 1995).

[17]      *H&D Tire and Automotive-Hardware Inc. v. Pitney Bowes Inc.*, 250 F.3d 302, 306 (5th Cir. 2001).

[18]      *De Aguilar v. Boeing*, 47 F.3d at 1412 (emphasis in original).

exceed the jurisdictional amount of $75,000.00."   The undersigned finds the plaintiffs' response insufficient to establish subject-matter jurisdiction.

The plaintiffs ignored the undersigned's express finding that the amount in controversy was not facially apparent and argued that it is.   Once a court has concluded that the amount in controversy is not facially apparent, the party invoking the court's jurisdiction must present facts, supported by summary-judgment-type evidence, proving by a preponderance of the evidence that an amount exceeding $75,000 is in controversy.[19]   The plaintiffs presented no such evidence.

In a case presenting a similar scenario, the court said the party invoking the court's jurisdiction:

> has not produced any competent evidence . . ., substantiating its contention that the amount in controversy in this matter exceeds $75,000.00, exclusive of interest and costs.   Instead, it has relied solely upon the allegations concerning plaintiff's injuries/damages that are contained in the petition . . . which the undersigned has already determined [is] insufficient to establish the amount in controversy.   As such, [the party] has failed to carry its burden of proof. . . .[20]

---

[19]     *Luckett v. Delta Airlines*, 171 F.3d at 298; *Allen v. R & H Oil & Gas Co*., 63 F.3d at 1335.

[20]     *Sanchez v. Big Lots Stores, Inc*., No. 10-208-BAJ-M2, 2011 WL 900295, at *3 (M.D. La. Feb. 18, 2011).

The undersigned finds that the plaintiffs in this case have similarly failed to carry their burden of proof.

The plaintiffs listed in their complaint and again in their response to the undersigned's briefing order the categories of damages that they seek to recover, but provided no quantification of their individual or collective damages in any of these categories. The *type* of damages sought to be recovered does not determine whether the amount in controversy requirement has been satisfied. Instead, the *amount* of damages sought to be recovered governs the inquiry. Here, the plaintiffs provided no facts on which a calculation of the damages in any of the categories might be based. For example, there is no information concerning which plaintiffs sought medical treatment or the nature or cost of that treatment, the nature or extent of their displacement claims, the value of the property allegedly damaged; or the value of any plaintiff's lost wage claim. In sum, neither the complaint nor the responsive brief provides any facts that would permit a reasonable estimate of the plaintiffs' actual damages to be calculated or any evidence attempting to establish the amount sought to be recovered by any of the plaintiffs in this lawsuit.

There are certain situations in which the nature of the alleged injury or the type of damages claimed will support a conclusion that the amount-in-controversy

threshold has been crossed.[21]  However, when "the list of damages contained in the petition . . . does not provide the Court with any guidance as to the actual monetary amount of damages," the amount in controversy is not facially apparent.[22]  For example, when a petition contained an itemization of claims, including past, present, and future pain and suffering, mental anguish and emotional distress, loss of enjoyment of life, disability, past, present, and future medical expenses, past, present, and future lost wages, and impairment of earning capacity and punitive damages as a result of defendant's driving while intoxicated, but did not indicate what type of injury the plaintiff sustained, what type of medical treatment was necessary, what type of disability was sustained, whether the disability was temporary or permanent, or what type of wages were lost or expected to be lost, the court was unable to evaluate the amount of the damages sought to be recovered.[23]  This case is similar. The undersigned cannot determine, from the face of the plaintiffs' complaint or from

---

[21]    See, e.g., *Davis v. Grider*, 2000 WL 634655, at *2 (5th Cir. 2000); *Stockstill v. Wal-Mart Stores, Inc.*, No. 10-95-FJP-SCR, 2010 WL 6494058, at *2 (M.D. La. Dec. 20, 2010) ("A review of the types of injuries alleged in the petition at the time of removal clearly establish that the jurisdictional amount has been met.  As the defendants pointed out, these injuries include serious head, brain, and neurological injuries to a 2 ½ year old child.  Plaintiff also described Maizie's injuries as severe, lifelong, and debilitating.")

[22]    *Moore v. Louisiana Generating, LLC*, No. 09-789-C, 2010 WL 565383, at *2 (M.D. La. Feb. 17, 2010).

[23]    *Kaiser v. Parker*, No. 09-170-JJB-DLD, 2009 WL 2579086, at *3 (M.D. La. Aug. 20, 2009).

-10-

their response to the undersigned's briefing order, the precise nature of any one of the

plaintiffs' injuries or whether any one of the plaintiffs has likely sustained damages

in an amount exceeding $75,000.

The plaintiffs suggest that their damages are similar to those awarded in *In re*

*New Orleans Train Car Leakage Fire Litigation*, 795 So.2d 364 (La. App. 4 Cir.

2001), where they contend the "plaintiffs' claims for physical pain and suffering

averaged approximately $100,000 per plaintiff." (Rec. Doc. 11 at 4). The plaintiffs

apparently misread that decision. In the *New Orleans Train Care Leakage* case, the

trial court awarded compensatory damages to twenty plaintiffs.

> The trial courts' awards range from a high of $116,800 to
> a low of $5,500. . . . Four plaintiffs were awarded less than
> $10,000, eight were awarded between $11,000 and
> $29,900, six were awarded $33,900 to $63,000 and two
> were awarded $116,800 and $116,000 respectively. From
> this, we generalize to say that a typical award of
> compensatory damages in this case is in the low to middle
> tens of thousands of dollars. . . .[24]

The appellate court affirmed the trial court's awards.[25] In that case, $850 million in

punitive damages was also awarded, for an average award of $105,562.42 per class

---

[24]    *In re New Orleans Train Car Leakage Fire Litigation*, 2000-0479 (La. App. 4 Cir. 06/27/02), 795 So.2d 364, 384.

[25]    *In re New Orleans Train Car Leakage*, 795 So.2d at 393. The plaintiffs do not reference the compensatory damages awards made to an additional eighteen plaintiffs in *In re New Orleans Train Car Leakage Fire Litigation*, 00-1919 (La. App. 4 Cir. 04/20/05), 903 So.2d 9, *writ denied*, 05-1297 (La. 02/02/06), 922 So.2d 1171.

member.[26]   In this case, however, the plaintiffs do not seek to recover punitive

damages, making the amount of punitive damages awarded in the *New Orleans Train

Care Leakage* case irrelevant.

More recently, the Louisiana Supreme Court shed light on appropriate awards

in chemical release cases, holding that an award in the range of $100 to $500 per

plaintiff was appropriate when the

> claimants suffered relatively minor symptoms from their
> exposure, such as watering eyes, nose or throat irritation,
> coughing, and headaches.  None of the claimants sought or
> required medical attention as a result of the exposure.
> They were not required to evacuate from the area as a
> result of the chemical release, nor did they miss any work
> or school.[27]

This was contrasted with an award of $5,000 to $15,000 for physical damages and

from $2,000 to $5,000 for mental anguish awarded to the third flight of plaintiffs in

the *New Orleans Train Car Leakage Fire Litigation*.[28]  In the latter case, the chemical

release took place over a three-day period, the plaintiffs living near the site were

displaced from their homes, some of them sought medical treatment, and some had

---

[26]     *In re New Orleans Train Car Leakage*, 795 So.2d at 384.

[27]     *Howard v. Union Carbide Corp.*, 2009-C-2750 (La. 10/19/10), 50 So.2d 1251, 1256.

[28]     *Howard v. Union Carbide*, 50 So.2d at 1257 n. 4, citing *In re New Orleans Train Car Leakage Fire Litigation*, 00-1919 (La. App. 4 Cir. 04/20/05), 903 So.2d 9, *writ denied*, 05-1297 (La. 02/02/06), 922 So.2d 1171.

physical or mental symptoms that lasted for a period of months.  Based on the scant information supplied by the plaintiffs in their complaint and their briefing in the instant case, it is impossible to determine whether the plaintiffs sustained injuries similar to those in the cited cases.  Even if their injuries were as bad as those of the plaintiffs in the cited cases, however, their damages would not approach the jurisdictional threshold.

This matter is purported to be a class action, although no class has yet been certified.  The burden of establishing the amount in controversy may be satisfied by showing that the amount of attorneys' fees likely to be recovered by the plaintiffs pushes the amount in controversy above the threshold.[29]  In this case, however, the plaintiffs have not argued that the amount of attorneys' fees likely to be recovered should be factored into the amount in controversy analysis, and there is no evidence tending to show the amount of attorneys' fees the named plaintiffs might recover or providing a mechanism for calculating a reasonable fee.  Therefore, the undersigned finds that the plaintiffs have not demonstrated that adding the class's likely attorneys' fees to the named plaintiffs' likely compensatory damages would result in an amount in controversy exceeding $75,000 for one or more of the plaintiffs.

---

[29]     *Foret v. Southern Farm Bureau Life Ins. Co*., 918 F.2d 534, 537 (5th Cir. 1990).

The undersigned finds that the plaintiffs failed to satisfy their burden of proof. Accordingly, the undersigned further finds that the plaintiffs have not proven that the amount in controversy in this lawsuit exceeds the statutory threshold for federal-court jurisdiction.

CONCLUSION

The undersigned finds that the plaintiffs have not proven that the parties are diverse in citizenship or that the amount in controversy exceeds the jurisdictional requirement.  Accordingly, the undersigned finds that this Court lacks subject-matter jurisdiction and recommends that this action be dismissed without prejudice.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen days after being served with of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by

-14-

Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error.  See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

Signed at Lafayette, Louisiana, this 16th day of July 2012.

_____
PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE